Filed 7/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY ARNOLD,<br><br>    Defendant and Appellant. | B321031<br><br>(Los Angeles County<br>Super. Ct. No. BA037726) |

APPEAL from an order of the Superior Court of Los Angeles County.  Laura F. Priver, Judge.  Reversed and remanded with directions.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This is defendant and appellant Anthony Arnold's third appeal arising from his 1992 conviction for second degree murder (Pen. Code, § 187) in the stabbing death of a man during a street brawl.[1]  The jury in defendant's case also found a sentencing enhancement alleging that he personally used a knife to be not true.  (§ 12022, subd. (b).)

Defendant appealed his conviction, and we affirmed the judgment.  (*People v. Arnold* (Oct. 29, 1993), B065831 [nonpub. opn.], at p. 13 (*Arnold I*).)  In 2019, defendant filed a petition for resentencing pursuant to section 1172.6.[2]  We reversed the trial court's summary denial of that petition and remanded the matter for an evidentiary hearing per section 1172.6, subdivision (d)(1). (*People v. Arnold* (Dec. 15, 2020), B303619 [nonpub. opn.], at p. 10 (*Arnold II*).)

Following that evidentiary hearing, the trial court again denied defendant's petition, finding that defendant could still be convicted of murder as the actual killer because "it is clear beyond a reasonable doubt that [defendant] stabbed the victim."

Defendant now appeals for a third time, arguing, among other things, that substantial evidence did not support the trial court's ruling he could still be convicted of murder as the actual killer.  We agree that the court erred in finding that defendant stabbed the victim to death after the jury found not true an

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

[2]    When defendant filed his petition, the relevant resentencing statute was numbered section 1170.95.  Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  For simplicity, we refer to the section by its new numbering.

allegation that defendant personally used a knife.  Therefore, we reverse the order denying defendant's petition and direct the trial court to conduct a new hearing to determine, without contradicting the prior knife use finding, whether the prosecution proved beyond a reasonable doubt that defendant is guilty under a permissible theory of murder.

## FACTS AND PROCEDURAL BACKGROUND

### I.  The 1992 Conviction and First Appeal

"At 3 a.m. on July 8, 1990, Kathryn Cox was awakened by yelling outside her apartment on Adams and Magnolia Avenues in Los Angeles.  Unable to see anything from her bedroom window, she went to the front door and stepped out to the porch.  Later, she went to the end of the walkway.  She saw a group of about 12 young men and women chasing Leonides Marroquin Carranza.  They caught the victim in a vacant parking lot directly across from her apartment.  About five men had the victim by a tree and were hitting him.  He got free and ran, but he was chased and caught by [defendant].  [Defendant] hit the victim in the stomach several times.  Ms. Cox demonstrated how [defendant] struck the victim, and the prosecutor described her movement as 'a closed fist with a horizontal motion, parallel to the ground in a[n] inward-type motion, with the thumb side of the fist moving towards the body.'  The victim fell, and while he was lying on his back, [defendant] again hit him two or three times.  The witness' demonstration of the way in which [defendant] struck the victim at that point was described as 'the same type of motion . . . only in a downward direction.'  She also stated that she saw [defendant] hit the victim in a punching motion, with the 'fist in a forward direction.'  Ms. Cox, who by this time was standing on the sidewalk outside her apartment

3

house about 45 feet from the crime scene, did not see anything in [defendant's] hand. She heard sirens and then she heard someone say, 'Vamanos, Spider,' at which point [defendant] ran away.

"Ms. Cox walked across the street and saw that the victim had been stabbed several times in the abdomen. She testified that there was a lot of blood. . . . [¶] . . . The victim died of multiple stab wounds. In addition to 13 stab wounds, the victim had abrasions on his face and forehead as well as defensive wounds on his hands.

"Bianca Alvarez, a friend of [defendant's], testified that his nickname was Spider and that he belonged to a gang named 'Harpies.' She also testified that on the night of the murder, the victim, who was drunk, walked up Magnolia and passed remarks to the group. One of the group suggested that they take the victim's wallet. About five of the males in the group, including [defendant], started following the victim; and after they caught up with him, they started pushing him as they stood in a circle around him. However, Alvarez left at that point and returned only after everyone was running from the area and the victim had been stabbed.

"[Defendant] told Los Angeles Police Department Detective Eric Browne that his nickname was Spider. [Defendant] had a spider tattoo on his right upper arm, which he showed to the members of the jury." (*Arnold I*, *supra*, B065831, at pp. 2–4.)

At trial, the "jury convicted [defendant] of second degree murder [(§ 187)] and found the allegation that he personally used a knife in the commission of the offense to be not true [§ 12022, subd. (b)]. Defendant was sentenced to 15 years to life."

4

(*Arnold I*, *supra*, B065831, at p. 2.)  We affirmed the conviction. (*Id.* at p. 13.)

## II.    The Resentencing Petition and Second Appeal

"On January 28, 2019, defendant, in propria persona, filed a petition to be resentenced pursuant to section [1172.6].  He averred that an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and he could not now be convicted of murder because of changes made to sections 188 and 189, effective January 1, 2019." (*Arnold II*, *supra*, B303619, at p. 4.)

"After entertaining oral argument, the trial court denied defendant's petition.  The minute order provides:  'The petition is denied because the petitioner is not entitled to relief as a matter of law.  [¶]  The petitioner was convicted of 2nd degree murder. However, a review of the portions of the court file and appellate record available to this court reveal that the petitioner was the actual killer.'"  (*Arnold II*, *supra*, B303619, at p. 5.)

The defendant appealed, and the People conceded that "defendant made a prima facie showing of eligibility."  (*Arnold II*, *supra*, B303619, at p. 8.)  We agreed, reversing and remanding "[b]ecause defendant satisfied the prima facie stages of section [1172.6], subdivision (c), [requiring] the trial court . . . to set the matter for an order to show cause, with an evidentiary hearing." (*Ibid.*)

## III.    The Resentencing Hearing and Third Appeal

The matter proceeded to an evidentiary hearing, held over two sessions in October 2021 and April 2022.  Neither defendant

nor the prosecution presented additional admissible evidence, so the matter was "submitted on the evidence elicited at trial, the record of conviction, and the extensive briefing."

On April 15, 2022, the trial court issued a written order denying the petition. The court held that "[t]he only logical conclusion from the facts found in the record of conviction in this matter is that [defendant] was the actual killer." The court also found that defendant acted with express or implied malice.

In reaching these conclusions, the trial court acknowledged that "[t]he knife allegation was found not true by the jury." However, the trial court found that, given the totality of the evidence adduced at trial, including "the description of the motion [defendant made towards the victim], the witnesses' observation of blood and stab wounds following the incident, the coroner's testimony regarding the cause and manner of death; it is clear beyond a reasonable doubt that [defendant] stabbed the victim."

Defendant timely appealed.

## DISCUSSION

### I.    Background Legal Principles

Section 1172.6 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[ ] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973 (*Drayton*), overruled in part on other grounds in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).)

As is relevant here, in order to obtain resentencing relief, the petitioner must allege that (1) an information had been filed against him allowing the prosecution to proceed under a theory of murder under the felony murder rule, the natural and probable

6

consequences doctrine, or any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)(1)); (2) the petitioner was convicted of murder (§ 1172.6, subd. (a)(2)); and (3) he could not now be convicted of murder as presently defined. (§ 1172.6, subd. (a)(3)).

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c).) At the evidentiary hearing, the parties may rely upon evidence in the record of conviction or new evidence to demonstrate whether the petitioner is eligible for resentencing. (§ 1172.6, subd. (d)(3).) The prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) If the prosecution cannot meet its burden, and the petitioner prevails, he is entitled to vacatur of the murder conviction and resentencing as set forth in section 1172.6, subdivision (e).

## II.    Standard of Review

In determining whether a trial court correctly denied a section 1172.6 petition following an evidentiary hearing, "'"we review the factual findings for substantial evidence and the application of those facts to the statute de novo."'" (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) However, "[t]he primary issue here is the preclusive effect of [defendant's] acquittal" on the allegation that he personally used a knife, which is "an issue of law that we independently review." (*People v. Cooper* (2022) 77 Cal.App.5th 393, 412 (*Cooper*).)

7

## III. Analysis

Defendant raises three arguments against the order denying his section 1172.6 petition. He argues that (1) the trial court's determination that defendant was the actual killer is precluded by the jury's prior not true finding on the personal use of a knife allegation; (2) the trial court improperly relied on evidence in the preliminary hearing transcript; and (3) the trial court erroneously relied on the factual summaries from our prior opinions in this matter.

### A. *Preclusive Effect of Prior Jury Findings*
#### 1. *Relevant law*

Since defendant's second appeal, there have been substantial developments in the law regarding the preclusive effect of prior jury findings at a section 1172.6 resentencing hearing.

##### i. <u>*Cooper, supra*, 77 Cal.App.5th 393</u>

In April 2022, our colleagues in the First District held that "a trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented." (*Cooper*, *supra*, 77 Cal.App.5th at p. 398.)

The defendant in *Cooper* was charged with kidnapping and murdering a man who died of a gunshot wound to the head. (*Cooper*, *supra*, 77 Cal.App.5th at pp. 399–400.) The jury convicted him on the kidnapping and murder charges and found true the allegation that a principal had been armed with a gun during both offenses. (*Id.* at p. 399.) However, although the defendant stipulated to being a convicted felon, the jury acquitted him of the charge of being a felon in possession of a firearm. (*Ibid.*) At the defendant's section 1172.6 hearing, the trial court

8

found that the defendant was ineligible for relief, "based in part on [the court's] belief that [the defendant] possessed and fired a gun." (*Cooper*, *supra*, at p. 398.)

The *Cooper* court reversed, holding that a trial court may not find that a defendant is ineligible for resentencing under section 1172.6 "by relying on factual determinations about the defendant's gun use that 'turn[ed] acquittals and not-true enhancement findings [at trial] into their opposites.'" (*Cooper*, *supra*, 77 Cal.App.5th at p. 413.)

In arriving at this conclusion, the *Cooper* court observed that "it is not clear whether collateral estoppel principles apply in section [1172.6] proceedings." (*Cooper*, *supra*, 77 Cal.App.5th at p. 413.) The court noted that "[w]hen applicable in criminal cases, the [collateral estoppel] doctrine 'is a component of the double jeopardy clause of the Fifth Amendment' and article I, section 15, of the California Constitution, which both 'provide that no person may be *tried* more than once for the same offense.' [Citations.] Thus, in the criminal context, '[c]ollateral estoppel is traditionally applied to successive prosecutions, and there is some question whether [the doctrine] applies to further proceedings in the same litigation.' [Citation.] Indeed, we have previously indicated that 'double jeopardy principles are not at stake" in a section [1172.6] proceeding.' [Citations.]" (*Cooper*, *supra*, at pp. 412–413.)

Instead of applying the collateral estoppel doctrine, the court turned to "established case law in the analogous context of petitions for resentencing under the Three Strikes Reform Act of 2012" (Proposition 36). (*Cooper*, *supra*, 77 Cal.App.5th at p. 413.) It held that, like Proposition 36, the law that enacted section 1172.6 "created a 'parallel structure' [citation] between its

9

amendments to existing law (§§ 188 and 189 governing liability for murder) and its resentencing provisions (section [1172.6])[,]" which "'reflects an intent that sentences imposed on individuals with the same criminal history be the same, regardless of whether they are being sentenced or resentenced.'" (*Cooper*, *supra*, at p. 415.)

At least one appellate court has applied *Cooper* to a jury's not true finding on a personal weapons use allegation. (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1020 (*Henley*) [trial court erred by finding that the defendant used a firearm to commit the charged offense, despite relying on "the same evidence the jury found did not prove beyond a reasonable doubt the allegation that [the defendant] personally used a firearm"].)

ii. *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*)

In August 2022, four months after *Cooper* was published and four months before the *Henley* court adopted its reasoning, our Supreme Court addressed whether a prior jury finding would have preclusive effect on a section 1172.6 proceeding.

The prior jury finding in *Strong* found true that the defendant had been a major participant in the charged offense, rather than finding not true that he personally used a weapon. (*Strong*, *supra*, 13 Cal.5th at p. 704.) But we find it instructive that the court resolved the question of the finding's preclusive effect by applying the collateral estoppel doctrine. (*Id.* at p. 715 ["Because the text of section 1172.6 does not speak in any direct way to the issue before us, we turn to background principles for guidance. In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel."]) The

10

court's analysis suggests that the collateral estoppel doctrine does apply to section 1172.6 proceedings, the *Cooper* court's constitutional concerns notwithstanding.

2. *Analysis*

The parties disagree on what law applies in this appeal. Defendant urges us to apply *Cooper*; the People argue that *Cooper* was wrongly decided and encourage us to use the collateral estoppel doctrine, as our Supreme Court did in *Strong*.[3]

We need not decide between these two approaches to resolve this appeal; assuming *arguendo* that either *Cooper* or the collateral estoppel doctrine apply, both compel the same result.

i. <u>*Cooper*</u>

As in *Cooper*, no new evidence was adduced at defendant's section 1172.6 hearing. Therefore, we must determine whether the trial court denied defendant's petition on grounds that contradicted the jury's prior finding that defendant did not personally use a knife. (*Cooper*, *supra*, 77 Cal.App.5th at p. 398.)

The trial court's order undoubtedly contradicted the jury's prior finding. The court found that "[t]he only logical conclusion from the facts found in the record of conviction in this matter is that [defendant] was the actual killer." In arriving at this conclusion, the court rejected the argument that the jury's not true finding on the knife allegation prevented it from finding "beyond a reasonable doubt that the [defendant] stabbed the victim."

---

[3] Although the People extensively argued that the collateral estoppel doctrine applies and warrants affirmance, defendant did not brief the collateral estoppel issue.

11

The finding that defendant was the actual killer, premised on the trial court's conclusion that defendant stabbed the victim, effectively "'turned [the jury's] . . . not-true enhancement finding[] [at trial] into [its] opposite[].'" (*Cooper*, *supra*, 77 Cal.App.5th at p. 413.)  Under *Cooper*, this was error.

### ii.  Collateral estoppel

Collateral estoppel is "'grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed."' [Citation.]" (*Strong*, *supra*, 13 Cal.5th at pp. 715–716.)  "It applies in criminal as well as civil proceedings." (*Id.* at p. 716.)  The doctrine "bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.'" (*Ibid.*)

However, "'[e]ven if the[ ] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles' of promoting efficiency while ensuring fairness to the parties. [Citations.]" (*Strong*, *supra*, 13 Cal.5th at pp. 715–716.)

Here, each of the five threshold requirements are met.  At the 1992 trial, one issue the jury had to decide was whether defendant personally used a knife in the commission of the murder.  The trial court instructed the jury as follows:  "It is alleged . . . that in the commission of the crime charged, the

defendant personally used a deadly or dangerous weapon.  If you find such defendant guilty of [murder] . . . you must determine whether or not such defendant personally used a deadly or dangerous weapon in the commission of such crime.  [¶]  . . .  [¶] The term 'used a dangerous or deadly weapon,' as used in this instruction, means to display such a weapon in an intentionally menacing manner or intentionally to strike a person with it.  [¶] The People have the burden of proving the truth of this allegation.  If you have a reasonable doubt that it is true, you must find it to be not true."[4]

The jury found the knife use allegation not true.  Per the instructions given, it had to assess whether the prosecution proved beyond a reasonable doubt that defendant "intentionally . . . str[uck]" the victim with a knife.  The trial court considered the exact same issue at the section 1172.6 hearing, where it determined "beyond a reasonable doubt that [defendant] stabbed the victim."

It is undisputed that the remaining four threshold requirements are satisfied.  The issue of whether defendant stabbed the victim was actually litigated at the original trial.  As described above, the jury necessarily decided the issue in rendering its not true finding on the knife use allegation.  The jury's decision was final and was made on the merits, and both the jury trial and the resentencing involved identical parties.

Moreover, invoking the collateral estoppel doctrine in this appeal would not contravene the doctrine's fundamental

---

[4]     The jury's verdict found "the allegation that in the commission . . . of the above offense, [defendant] personally used a deadly and dangerous weapon, to wit, knife, . . . to be not true."

13

principles.  (Contra, e.g., *Strong*, *supra*, 13 Cal.5th at p. 716 [collateral estoppel "does not apply when there has been a significant change in the law since the [prior] findings were rendered that warrants reexamination of the issue"].)

Therefore, under the collateral estoppel doctrine, the trial court erred in finding that the defendant stabbed the victim.

### iii.    The People's counterarguments

The People raise five arguments against our conclusion.[5]

First, the People contend that the trial and the section 1172.6 hearing cannot have involved identical issues because, at the latter, "the parties are permitted . . . to present 'new or additional evidence' [§ 1172.6, subd. (d)(3)] (or simply raise new arguments based on the cold record) to an independent factfinder whose decision is not based on what the original jury found."[6] But in this case, neither party presented new evidence at the section 1172.6 hearing.  The trial court thus relied on the exact same evidence the jury heard at the 1992 trial.

Alternatively, the People try to analogize this case to *People v. Santamaria* (1994) 8 Cal.4th 903 (*Santamaria*).  The People construe *Santamaria* as holding that the issue of whether a

---

[5]    Because we assume *arguendo* that *Cooper* applies to this appeal, we need not reach the People's claims that the case was wrongly decided.

[6]    The People also claim that the structure of section 1172.6's resentencing mechanism implicitly conveys the Legislature's "intention that in these evidentiary hearings, prior acquittals and findings of insufficient evidence generally do not have preclusive effect."  This interpretation reads more into the statute than is there.

14

defendant used a knife to commit murder is not identical to any issue necessarily decided by a not true finding as to a knife use allegation.

*Santamaria* does not stretch that far. In that case, the defendant's felony murder conviction was reversed and remanded for retrial. (*Santamaria, supra,* 8 Cal.4th at p. 909.) The defendant argued that the original jury's not true finding on a personal knife use allegation required the retrying prosecution to "prove some basis for liability, such as that [the] defendant aided and abetted the actual perpetrator, that did not involve personal knife use," and required "the trial court [to] . . . instruct the [second] jury that [the defendant] did *not* use [a] knife." (*Id.* at p. 910.)

Our Supreme Court disagreed; applying the collateral estoppel doctrine, it held that the prior not true finding "show[ed] only that there was a reasonable doubt in the minds of the jurors that defendant specifically used a knife. *It d[id] not show the reverse, that the jury specifically found defendant was an aider and abettor*," or establish conclusively that the defendant did not use a knife. (*Santamaria, supra,* 8 Cal.4th at p. 919.) The Court concluded that the jury's doubt "as to knife use did not preclude a murder conviction here . . . although it did mandate a not true enhancement finding." (*Id.* at p. 922.)

As the court's holding shows, the issue sought to be precluded in *Santamaria* differs significantly from the issue defendant seeks to preclude here. In this appeal, defendant argues that the prior not true finding on the knife use allegation precludes the trial court from finding, beyond a reasonable doubt, that he stabbed the victim. Conversely, the *Santamaria* defendant tried to preclude the prosecution from retrying him on

15

any theory involving his *potential* use of a knife. (*Santamaria, supra,* 8 Cal.4th at p. 920 ["Although defendant claims he merely seeks to preclude the theory that he used the knife, he necessarily is claiming more; he seeks to preclude the theory, and evidence to support the theory, that he *either* used the knife or aided and abetted the one who did. This, however, is not the issue decided regarding the enhancement allegation"].) In the former scenario, the issue sought to be precluded is identical to the issue the jury decided in its not true finding. In the latter, it is not.

Second, the People contend that, under the collateral estoppel doctrine, a prior not true finding does not preclude subsequent contradictory findings. The People stress that a not true finding does not constitute a factual finding of defendant's innocence as to the alleged knife use, but rather shows that the jury was "not convinced beyond a reasonable doubt of [the] theory or fact[s] advanced by the prosecution." (*People v. Harrison* (2021) 73 Cal.App.5th 429, 440.) They argue that because the not true finding is not a finding of fact, it should not carry preclusive effect.

We agree that the jury did not make a factual finding as to whether defendant used a knife. But the question of defendant's factual innocence on the knife allegation is irrelevant to our inquiry. The pertinent question for collateral estoppel purposes is not whether the jury and the trial court reached identical factual *findings*, but whether they decided identical factual *allegations*. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342 ["The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same"].)

16

And in this case, the issues were identical: Both the jury and the trial court decided whether the prosecution proved beyond a reasonable doubt that defendant stabbed the victim to death.

Third, the People argue that because section 1172.6, subdivision (d)(2) expressly gives preclusive effect to one type of prior acquittal—namely, a finding that the defendant did not act with reckless disregard for human life or was not a major participant in a felony—the statute presumably does not give preclusive effect to any other acquittals. We disagree that, when read as a whole, the subdivision has such a dramatic effect. (*People v. Ramirez* (2019) 41 Cal.App.5th 923, 932 (*Ramirez*) ["Each section of a statute must be construed in context, keeping in mind the statutory purpose, and harmonizing related sections to the extent possible"].)

Section 1172.6, subdivision (d)(2), reads as follows: "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have the murder, attempted murder, or manslaughter conviction vacated and to be resentenced. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." Read together, the subdivision suggests the Legislature's intention "to streamline the process" by grouping together "'a waiver . . . with a presumption.'" (*Ramirez*, *supra*, 41 Cal.App.5th at p. 932; see also *Harrison*, *supra*, 73 Cal.App.5th at p. 439.) The inclusion of a mechanism providing expedited relief for certain defendants does not imply a legislative intent to stop other defendants from receiving the benefit of favorable prior jury findings.

17

Fourth, the People cite to our analysis in *Arnold I*, characterizing our opinion as suggesting that the jury's prior finding on the knife use allegation need not preclude a later finding that defendant stabbed the victim.[7]  In *Arnold I*, we determined that the jury's not true finding on the knife use allegation did not invalidate its simultaneous guilty verdict on the second degree murder charge, "reject[ing] the argument that we cannot consider that [defendant] had a knife because the jury found the personal knife use enhancement not true."  (*Arnold I*, *supra*, B065831, at p. 8.)

However, our analysis was premised on statutory and case law designed to reconcile jury verdicts that are facially inconsistent with simultaneously rendered verdicts or findings. (*People v. Lopez* (1982) 131 Cal.App.3d 565, 571 [apparent inconsistencies between the verdict and special findings "'"may be caused not by the confusion but the mercy of the jury, of which [an] appellant can neither complain nor gain further advantage. [Citations.]"'"]; § 954 ["'An acquittal of one or more counts shall not be deemed an acquittal of any other count.'"])  We question whether these authorities allow a trial court presiding over a postconviction resentencing hearing to contradict a jury's prior finding, particularly when no new evidence was presented.

Lastly, the People claim that the trial court's alternate finding that defendant acted with implied malice, "standing

---

[7]     Under the California Rules of Court, a party ordinarily may not cite to an unpublished opinion.  (Cal. Rules of Court, rule 8.1115(a).)  However, an unpublished opinion may be cited or relied on "[w]hen the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel."  (Cal. Rules of Court, rule 8.1115(b)(1).)

alone, was sufficient for the trial court to deny [defendant] relief." We disagree. The trial court's order denying defendant's petition contains one sentence finding defendant "acted with express or implied malice," unaccompanied by further explanation. The bulk of the order is dedicated to a detailed analysis of the determination that defendant was the actual killer because he stabbed the victim. When the court briefly returns to the question of implied malice, it suggests that the malice finding was substantially based on the assumption that defendant stabbed the victim.

Therefore, it appears that the trial court's implied malice finding is just as impaired as its finding that defendant was the actual killer. Both findings rely on the trial court's erroneous conclusion that defendant stabbed the victim.

iv.    Disposition

Having concluded that the trial court erred, we turn to the question of disposition. Defendant urges us to grant his petition, arguing that he cannot presently be found guilty of murder. However, we note that the record contains evidence that could support a finding that, despite not stabbing the victim, defendant acted with express or implied malice.[8] (§ 189, subd. (e)(3).) For example, a key eyewitness testified that once the victim broke away from the mob that had cornered him, defendant alone pursued him and appeared to hit him six or seven times with a

---

[8]    In so holding, "[w]e express no opinion about [defendant's] ultimate entitlement to relief following the hearing." (*Drayton, supra,* 47 Cal.App.5th at p. 983 [abrogated on other grounds by *Lewis, supra,* 11 Cal.5th at p. 963].) That determination is left to the trial court.

19

closed fist.  Defendant delivered two or three additional blows after the victim had fallen to the ground.

The trial court could reasonably conclude from this evidence that the defendant acted with implied malice, especially if combined with direct or circumstantial evidence showing that the victim had been stabbed by a third party before defendant hit him.

Accordingly, we conclude that it is appropriate to remand the matter for a new hearing to determine whether the prosecution proved, beyond a reasonable doubt, that defendant is guilty under a permissible theory of murder.  (§ 1172.6, subd. (d)(3).)  In doing so, the court shall not make any finding or rely on any evidence which contradicts the jury's finding that the personal use of a knife sentencing enhancement was not true.

For the sake of completeness, we will now turn to defendant's remaining arguments.

### B.	*Reliance on Preliminary Hearing Transcripts*

Defendant argues that the trial court improperly considered evidence contained in the preliminary hearing transcripts.

At the evidentiary hearings, defendant did not object to the trial court's consideration of the preliminary hearing transcripts. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 696 [the defendant forfeited challenge to admissibility of evidence by failing to object at section 1172.6, subdivision (d)(3) hearing].) On the contrary, defendant's counsel referred the trial court to the preliminary hearing transcript during the October 2021 hearing.

Defendant is also wrong on the merits.  Section 1172.6, subdivision (d)(3) explicitly provides that the trial court "may

20

consider evidence previously admitted at any prior hearing." However, "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."[9] (§ 1172.6, subd. (d)(3).)  Defendant alleges that the trial court violated this provision, but fails to identify any preliminary hearing evidence admitted under section 872 on which the trial court relied.  In fact, the trial court's order only references preliminary hearing testimony twice; in both mentions, the court merely confirms that an eyewitness' preliminary hearing testimony was consistent with her trial testimony.  This does not constitute error under section 1172.6.

---

[9]      Section 872, subdivision (b) reads as follows: "Notwithstanding Section 1200 of the Evidence Code, the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer or honorably retired law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted.  An honorably retired law enforcement officer may only relate statements of declarants made out of court and offered for the truth of the matter asserted that were made when the honorably retired officer was an active law enforcement officer.  Any law enforcement officer or honorably retired law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training that includes training in the investigation and reporting of cases and testifying at preliminary hearings."

## C.    *Factual History*

Finally, defendant argues that the trial court erred by relying on factual summaries from our prior appellate opinions in this case.

Section 1172.6, subdivision (d)(3) provides that the trial court may "consider the procedural history of the case recited in any prior appellate opinion."  The specificity of this provision "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing."  (*People v. Clements* (2022) 75 Cal.App.5th 276, 292, as mod. on den. of rehg, Mar. 16, 2022 (*Clements*).)

In summarizing the factual history of the case, the trial court did quote extensively from the statement of facts we wrote in *Arnold I*, *supra*, and quoted in *Arnold II*, *supra*.  But at the October 2021 evidentiary hearing, the trial court granted a continuance to allow time to receive and review the complete preliminary hearing and trial transcripts.  Moreover, in its analysis, the court explicitly cited portions of the original trial record.

Overall, the record demonstrates that the trial court probably relied on its independent review of the trial record, but quoted from our prior opinions to quickly summarize the broader factual history of defendant's case.  In the interest of avoiding future confusion on this issue, we note that when issuing orders from a section 1172.6 evidentiary hearing, the trial court should make clear that it is relying on facts taken from the evidence before it and not from prior appellate opinions.  (*Clements*, *supra*, 75 Cal.App.5th at p. 292.)

## DISPOSITION

The order denying defendant's section 1172.6 petition is reversed. The matter is remanded for the trial court to hold a new hearing to determine whether the prosecution proved, beyond a reasonable doubt, that defendant is guilty under a permissible theory of murder. (§ 1172.6, subd. (d)(3).) In doing so, the court shall not make any finding or rely on any evidence which contradicts the jury's finding that the personal use of a knife sentencing enhancement was not true.

<u>CERTIFIED FOR PUBLICATION</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.*
KWAN

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.